# SUPREME COURT

OF THE

## STATE OF MISSOURI

### APRIL TERM, 1908.

*(Continued from Volume 213.)*

## J. L. PORTER, Appellant, v. R. J. BOYD PAVING & CONSTRUCTION COMPANY.

Division Two, July 14, 1908.

1. **ORDINANCE: Signed by Mayor's Secretary.** When a document is required by the common law or by statute or by the charter to be "signed" by any person, a signature of his name, in his own proper or personal handwriting, is not required. Where the charter simply provided that the mayor shall sign an ordinance if it meets his approval, if the mayor examined the ordinance and approved it, and directed his secretary to "sign" his name thereto, and the secretary did so under his immediate direction, it was "signed" by the mayor. The charter in this respect differs from the explicit language of section 37 of article 4 of the Constitution relating to the signature to be affixed by the presiding officers of the two houses to a bill passed by the Legislature.

2. ———: ———: **Proved by Clerk's Seal.** Where the ordinance for the construction of a sewer was in due form and had been signed by the presiding officers of the two houses of the municipal assembly in accordance with the charter, and purported to be signed by the mayor in accordance therewith, and was authenticated by the city clerk under the seal of the city, the charter providing that an ordinance may be proved by the seal of the city, it would be a harsh ruling to hold that a contractor, under the ordinance, for a public improvement, must determine for himself the genuineness of the mayor's signature.

3. **ADVERTISEMENT: Ten Successive Days: Sundays.** Where the ordinance provided that a notice of the letting of a contract for the construction of a sewer "shall be published for ten successive days in a newspaper doing the city printing," and the paper which held the city printing contract was not published on Sundays, the tax bills are not invalid because the advertisement for bids was not published on two Sundays, if it was printed in at least ten successive week-day issues of the paper. "Ten successive days" means publication on ten successive days when the paper can be published without the publisher running the risk of being indicted for a violation of the Sunday statute of this State.

4. **TAXBILLS: Sewer: Completion: Useless Basins.** Where four catch-basins at the four corners of a certain street were not constructed as the contract required, and they were not built "because the street was not on grade," and their cost was not included in the final estimate, and the contract provided that the engineer should decide all questions that might arise relative to the execution of the contract, and he directed that these four useless basins should be omitted, it cannot be held that the taxbills are void because the work was not completed.

5. ———: ———: ———: **Embankment: Technical Departure.** Where every foot of the sewer pipe, of the size required by the ordinance, was laid, and on the proper lines and grades, it will not be held that the sewer was not completed simply because the contractor, under the direction of the engineer and inspector, instead of building an embankment of earth where the sewer was built above ground, one foot high and of a width equal to the full diameter of the pipe, over the pipe and its support, as the contract required, technically departed from its literal wording, and built a wall of masonry upon which to lay the pipe and laid the pipe in a bed prepared for it and then built the wall around and over it so as to protect it—this being necessary in order to build the sewer upon the grade, and the result being a much safer protection to the pipe than would have been afforded by simply piling an embankment of earth over and around the pipe.

6. ———: ———: ———: **Actual Value: Charter Provision.** The charter of Kansas City is available to a landowner, where the public improvement has not been done in exact conformity to the terms of the contract, to take the initiative and bring a suit in equity and reduce the contractor's recovery on the taxbill to what the work is reasonably worth to the landowner, not exceeding the contract price, by tendering or offering in his bill to pay the actual value of the work done.

7. ———: **Cancellation: Tender of Value.**  Before a court of equity will cancel a special taxbill for a public improvement or enjoin its collection on account of its being excessive, the landowner must tender the amount he conceives to be actually due and just; and unless he does that, instead of simply asking that the taxbill be cancelled on the ground that the work was not completed, the court can make no deduction from the taxbills.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

AFFIRMED.

*Ball & Ryland* for appellant.

(1)  Is not ordinance 16521 necessarily void by reason of the fact that it does not appear that it was left with the mayor as provided by the charter, or that it was signed by him, but that it was left with his secretary, and his secretary signed and approved it in the name of the mayor?  Secs. 6, 8, art. 3, charter of Kansas City; R. S. 1899, sec. 4160; Altman v. Dubuque, 111 Ia. 105; State ex rel. v. Dist. Court of Dakota County, 41 Minn. 518; Railroad v. Waterbury, 55 Conn. 19; Carondelet v. Wolfert, 39 Mo. 305; Keating v. Skiles, 72 Mo. 97; Twiss v. Port Huron, 63 Mich. 528; Whitney v. Port Huron, 88 Mich. 268; In re Standiford, 5 Mackey (D. C.) 549; Chapman v. Inhabitants of Limerick, 56 Me. 390; State ex rel. v. Carr, 67 Mo. 38; Barber Asphalt Pav. Co. v. O'Brien, 107 S. W. 25; City of Sedalia v. Scott, 104 Mo. App. 607; Knopfi v. Pav. Co., 92 Mo. App. 279.  (2)  Was the advertisement for the receipt of bids made in accordance with the requirements of the charter and ordinances of the city?  Sec. 12, art. 17, charter of Kansas City; sec. 811, Revised Ordinances of Kansas City of 1898; Clopton v. Taylor, 49 Mo. App. 126; St. Joseph ex rel. v. Landis, 54 Mo. App. 324; State v. Green, 66 Mo. 631; Ex parte Dodge, 7 Cowen 147; Anderson v.

Baughman, 6 Mich. 298; Franklin v. Holden, 7 R. I. 215; Russell v. Croy, 164 Mo. 93. (3) In any event the taxbills were prematurely issued. Sec. 10, art. 9, charter; Quest v. Johnson, 58 Mo. App. 54; sec. 18, art. 9, p. 154, charter and Revised Ordinances of K. C., 1889; McQuiddy v. Brannock, 70 Mo. App. 553; Bank v. Payne, 31 Mo. App. 512; Heman Construction Co. v. Loevy, 64 Mo. App. 437; Brick Mfg. Co. v. Hamilton, 51 Mo. App. 120; Brady v. Rogers, 63 Mo. App. 222; St. Joseph ex rel. v. McCabe, 58 Mo. App. 542; St. Louis v. Clemens, 49 Mo. 552; Burke v. Kansas City, 34 Mo. App. 570; Kimball v. Brawner, 47 Mo. 398; Heman v. Gerardi, 96 Mo. App. 231.

*William R. James* for respondent.

(1) The ordinance providing for the sewer became effective whether the mayor signed it or not. Secs. 6, 7 and 8, art. 3, charter; Saleno v. City of Neosho, 127 Mo. 635; Knight v. Railroad, 70 Mo. 231; Harpending v. Haight, 39 Cal. 189; Allentown v. Grim, 109 Pa. St. 113; Penn Gas Co. v. Scranton, 97 Pa. St. 538; Truesdale v. Rochester, 33 Hun 574; Terre Haute v. Volker, 129 Ill. 540; Doty v. Lyman, 166 Mass. 318; Woodruff v. Stewart, 63 Ala. 206; Erie v. Bier, 10 Pa. Supr. Ct. 381. (2) The ordinance was properly authenticated and the signature of the mayor cannot be questioned. Secs. 12, 14, art. 3, charter; Pierce v. Right, 45 Howard Pr. 1; Gaither v. Tax Collector, 40 La. Ann. 362; Wier v. State, 96 Ind. 311; Third School Dist. v. Atherton, 12 Metc. 105; Stevens v. Bay City, 26 Mich. 44; Eddy v. Wilson, 43 Vt. 163; Crommett v. Pearson, 18 Me. 344; Sawyer v. Manchester, 62 N. H. 135; Ball v. Pike, 53 N. H. 473; State v. Main, 69 Conn. 123; Gilbert v. New Haven, 40 Conn. 102. (3) The publication of the advertisement for bids was valid although not published on Sunday. Sec. 2240, R. S. 1899; Ex parte Fiske, 72 Cal. 125; Bank

v. Williams, 46 Mo. 17; Cattell v. Dispatch Publishing Co., 88 Mo. 356; Maloney v. Railroad, 122 Mo. 106. (4) The work was completed prior to the issue of the taxbills. Sec. 18, art. 9, charter; Hund v. Rackliffe, 192 Mo. 312; Bank v. Haywood, 62 Mo. App. 550; Wewell v. Cincinnati, 45 Ohio St. 407; Johnson v. Duer, 115 Mo. 366; Cremer v. Bates, 49 Mo. 523; Neenan v. Smith, 60 Mo. 290; Verdin v. St. Louis, 131 Mo. 26; Kiley v. Forsee, 57 Mo. 390; Newby v. Platte County, 25 Mo. 258; Elliott on Roads and Streets (2 Ed.), sec. 586; 2 Cooley on Taxation (3 Ed.), p. 1280; Dixon v. Detroit, 86 Mich. 516; Motz v. Detroit, 18 Mich. 494; Allen v. Woods, 45 S. W. 106; Asphalt Paving Co. v. Ullman, 137 Mo. 543; Steffens v. Fox, 124 Mo. 630; Cole v. Schrainka, 105 Mo. 303; People ex rel. v. Whidden, 191 Ill. 374; Chance v. Portland, 26 Ore. 286.

GANTT, J.—This is an action in equity against the defendants as owners and holders of certain taxbills, issued against the appellant's property, some eighty-three lots in J. L. Porter's second subdivision and addition to Kansas City, by which it is sought to have said bills canceled by the decree of the court and the apparent lien of said taxbills removed from the title to said lots.

To the defendant Construction Company had been let a contract for the construction of a sewer in sewer district number 227, which was confirmed by an ordinance of the council of Kansas City, on the 13th of May, 1901; and it proceeded with the execution of the work provided for in said contract, and the ordinance under which it was let, and claimed to have completed the same in accordance with its said contract on the 14th of September, 1901, on which date the city issued and delivered to the company the taxbills which are the subject of complaint, and thereupon the plaintiff

brought this action for the cancellation of said bills against the said property, on September 10, 1902.

The grounds as set forth in the petition on which the said bills are assailed were:.

First, that the ordinance No. 16521, which provided for the construction of the sewer and the letting of the contract for that purpose, and No. 16915 confirming the contract with the defendant company, were not enacted pursuant to the charter provisions in that behalf, in that, while purporting to have received the signature and approval of the mayor of the city, they, in fact, had not been signed by the mayor, but were signed and approved by his private secretary.

Second, that the notice of the letting of the contract was not published ten successive days within the twenty days next preceding the time for opening the bids, in that said publication was omitted from the newspapers during the period of publication on the 7th and 14th of April, which were Sundays.

Third, that the defendant company never completed the construction of said sewer prior to the issuance of the bills in question, and such completion of said work has never been done, and the particulars in which it is claimed that the contractor failed in completing the sewer are as follows: "(a) That the contract required the construction of seventeen catch basins, and the contractor only constructed thirteen. (b) That the contract provided that where any part of the sewer was to be built on or above the surface, and any other foundation is required than embankment, such construction and sewer built thereon shall be covered with an earth embankment carried to a height of not less than one foot above the top of the sewer and the top width of such embankment shall not be less than the greatest external diameter of the sewer, and that the contractor had failed to cover with an embankment, as required, a portion of about 1,000

feet in length of said sewer, which portion was required to be laid on a wall of rubble masonry.''

Fourth (a) that said contract provided that the excavation shall be done by open cut from the surface except where tunneling is expressly permitted or directed by the city engineer, and that no tunneling was in any manner permitted or directed by the city engineer; but notwithstanding, the contractor, in all parts of the work which was done in earth excavation, adopted the method of tunneling by alternating a section of tunnel with open excavation, instead of doing said work by open cut from the surface as required; and that by reason of such manner of doing said work, it was impossible to fill said trenches and tunnels in a compact manner, as required, and the same was not, in fact, done. (b) That when a trench is in rock formation, the filling required by the contract was that the same be filled with clay to a point two feet above the top of the sewer, provided that the rock from the trench might be used with an equal amount of earth; but no stones of greater dimensions than six inches should be used, and that the filling was required to rammed and tamped; and that 3,258 feet of said sewer was laid in trenches and excavated through rock, in which the contractor did not use earth or clay, as required, but, on the contrary, the rock taken from the trench was dumped into the trench as filling material. (c) That said contract further provided that all surplus materials from the trenches should be hauled away to such places within a distance of six hundred feet as might be designated by the engineer, and deposited according to his directions; and if no such place was designated, the contractor should be bound to remove the surplus at his own risk and cost; and said contractor, in violation of said requirement, failed to remove the surplus material, but left large quantities thereof dumped upon plaintiff's lands, situated in the

neighborhood of said sewer work. (d) That the contractor further failed to complete said contract in this: That manholes were required to be built in the line of said sewer at designated heights, and that the outside of all manholes should be thoroughly plastered with cement mortar; that twenty-nine of such manholes were provided to be built by said contract and ordinance, and the contractor omitted to finish and complete any of them, in that none of these manholes were plastered outside, as required. (e) That it was required that rubble masonry in the construction of said sewer should be built of the best quality of limestone, laid in cement mortar, the stone to be of uniform size, generally not less than two feet square in area and six feet in thickness; that each stone should be laid on its natural bed, with its face down, and should have uniform bearing and be well bedded in mortar, the work to be so laid as to secure a thorough bond throughout. And the charge is that no such rubble masonry was constructed at all; no such stone or quality of stone as required was used; it was omitted to lay it in cement mortar. All that was done was to use mortar on the outside; and that all of such part of said work was wholly inferior and in every respect failed to comply with the contract in that regard. (f) That said contract required, in joining the sections of sewer pipe, that the joints should be filled with mortar, one part Portland cement, two parts sand, and the joint all thoroughly cleaned on the inside and plastered externally, at least three inches beyond the rim of the socket; and that, in fact, the contractor wholly failed to complete said work in this particular, in that the plastering of each joint was never completed, but for about a fourth of the rim or circumferance of each socket at the bottom of the pipe was entirely without any mortar, and the work in that regard was left wholly incomplete.

Briefly stated, the above are the propositions on which relief by cancellation of the bills is asked.

The defendant's answer denies generally and specially all of the foregoing charges, and concludes with an allegation that, "In all things in the execution of said contract, it acted in good faith and under the direction of the city engineer or the inspector from his office; that, if in any material matter, an error has been made and the plaintiff has been damaged thereby, these defendants would surrender and cancel the said taxbills for the payment of such sum as the court may find the plaintiff should justly pay."

Upon a trial in the circuit court, the plaintiff's bill was dismissed and from that judgment the plaintiff has appealed to this court in due form of law. So much of the evidence as is necessary to a proper understanding of the respective contentions of counsel, will be noted in the course of the opinion.

I. The first proposition upon which these bills are attacked is that ordinance 16521 is void because it was not signed by the mayor of the city in person, but by his secretary. The testimony of Mayor Reed on this point was to the effect that the signature to this ordinance bore a close resemblance to his handwriting; that he thought without question that either Mr. Harvey, his secretary, signed the signature of the mayor to the ordinance, or he did it himself, but his best judgment was that Mr. Harvey wrote it under his immediate direction. As to the other ordinance, 16915, he was very positive that the signature was in his own handwriting. On cross-examination by counsel for the city, he was asked: "Q. You think, Mr. Reed, that if Mr. Harvey signed that other ordinance or either of these ordinances, he did it under your immediate direction? Ans. Yes, sir, and after I had examined the ordinance and told him to sign it for me.

Q. You approved the ordinance yourself? Ans. Oh, yes, always. Q. You simply used him for your hand, that is all? Ans. By the way, that is the way it is done very likely, but in a general way, it is this: Mr. Harvey will bring me the ordinances and I will examine them, and if there is a great bunch to sign, I tell him to sign them, sometimes he signs them in my room in my presence, and sometimes he takes them into the other room. As to these two ordinances, the first, my best judgment is that Mr. Harvey probably wrote my name under my direction, as to the other, I wrote it myself.''

Conceding that Mayor Reed did not affix his own signature to the ordinance 16521, but that it was signed under his immediate direction by his secretary, Mr. Harvey, would that fact alone render the ordinance void? Section 6 of article 3 of the charter of Kansas City provides that after passing the council ordinances shall be ''presented to the mayor. If the mayor approve any ordinance he shall sign it; if not he shall return it to the city clerk with his objection, and the city clerk shall at the next session of the house in which it originated return it to such house.'' It is also provided by section 8 of article 3, ''If any ordinance shall not be returned by the mayor within five days (Sunday excepted) after it shall have been presented to him for his approval, the same shall become a law in the same manner as if he had approved and signed it, and said ordinance shall be authenticated as having become a law by a certificate signed by the city clerk indorsed thereon as follows: 'This ordinance having remained with the mayor five days (Sunday excepted) has become a law this — day of ———, 18—, City Clerk,' and said ordinance shall be filed, recorded and preserved in the office of the city clerk as other ordinances.''

Unquestionably it has been generally held by the courts of England and of this country that when a document is required by the common law or by statute to be "signed" by any person, a signature of his name, in his own proper or personal handwriting, is not required. Thus in the execution of wills, it has often been decided that the testator need not sign his own name but might request another to sign his name for him. [4 Kent's Com., 514, note; 1 Jarman on Wills, 77, 78; Williams, Executors, 63-67; Nickerson v. Buck, 12 Cush. 332; Lord v. Lord, 58 N. H. 7; Vernon v. Kirk, 30 Pa. St. 218; Jesse v. Parker, 6 Gratt. 57; Upchurch v. Upchurch, 16 B. Mon. 102; Compton v. Mitton, 12 N. J. L. 70; Jenkyns v. Gaisford, 32 L. J. Probate, Mat. & Admr., 122.] And the same ruling obtained in the interpretation of the statute of frauds. [Schneider v. Norris, 2 Maule & S. 286; Durrell v. Evans, 1 Hurl. & C. 174; Tourret v. Cripps, 48 L. J. Ch. 567; Brayley v. Kelly, 25 Minn. 160; Sanborn v. Flagler, 9 Allen (Mass.) 474; Browne on Stat. Frauds, secs. 355, 356.]

In the construction of statutes requiring the signature, different statutes have received different constructions, some receiving a strict construction, from the obvious intent of the Legislature, and others, a more liberal one, for a like reason. In Finnegan v. Lucy (32 N. E. 656), 157 Mass. 439, this subject received an exhaustive examination by the Supreme Court of Massachusetts in a case arising under a statute of that State forbidding the sale of liquor to a husband after "notice" by the wife, "in a writing signed by her." In that case the notice bore the wife's name, but was signed by another person at her request and in her presence, and it was held sufficient. In that case counsel for the defendant relied upon the rule for the construction of statutes given in public statutes of Massachusetts (1882-1887), ch. 3, sec. 3. cl. 25,

which provided that: "The words 'written' and 'in writing' may include printing, engraving, lithographing, and any other mode of representing words and letters; but when the written signature of a person is required by law, it shall always be the proper handwriting of such person, or, in case he is unable to write, his proper mark." It was said by the court that the first portion of this statute had its origin in Henshaw v. Foster, 9 Pick. 312 (1830), in which it was held by Chief Justice PARKER, that printed votes are written votes within the meaning of the Constitution of that State requiring members of the House of Representatives to be chosen by *"written votes."* In Finnegan v. Lucy, supra, it was ruled that the statutory rule of construction did not have the effect of setting aside the established doctrines of law as to signatures and to require, in all cases where a document is to be signed by a person, a signature in his own proper handwriting, but to require the same only in those cases where, by express language or usage or by implication arising from the nature of the document to be signed, a written signature is required by law as the direct personal act of the person whose name is to be signed.

Counsel for plaintiff in this case have invoked clause 7 of section 4160, Revised Statutes 1899, which is an exact rescript of the Massachusetts statute above quoted. This section in our laws was first enacted in 1855 and was evidently adopted from the Massachusetts Revised Statutes of 1836. The charter provision plainly requires the mayor to sign all ordinances which meet his approval as an evidence of that approval. Being a member *pro tanto* of the law-making power, the ordinance would not be valid without his approval, unless passed over his veto. Had the charter contained the provision or a similar one to that found in section 37 of article 4 of the Constitution of this State, which ordains that, "No bill shall become

a law until the same shall have been signed by the presiding officer of each of the two houses in open session; and before such officer shall affix his signature to any bill, he shall suspend all other business, declare that such bill will now be read, and that, if no objections be made, he will sign the same to the end that it may become a law," we should have no hesitancy in holding the provision mandatory, and that nothing less than his signature by his own hand would suffice. [State ex rel. v. Mead, 71 Mo. l. c. 271.] But the charter simply provides that the mayor shall sign the ordinance if it meets his approval. In Queen v. Justices of Kent, L. R. 8 Q. B. 305, the statute required that a notice of appeal to a court of Quarter Sessions "shall be in writing, signed by the persons giving the same, or by his attorney on his, her, or their behalf." And it was held by the Court of Queen's Bench that a notice of appeal signed in the appellant's name by the clerk to his attorney with the appellant's authority was sufficient. BLACKBURN, J., said: "No doubt at common law, where a person authorizes another to sign for him, the signature of the person so signing is the signature of the person authorizing it; nevertheless, there may be cases in which a statute may require personal signature;" the other judges saying: "We ought not to restrict the common law rule, *qui facit per alium facit per se,* unless the statute makes a personal signature indispensable," and, "There is nothing in the statute to qualify the operation of that maxim."

The object of the charter provision is to authorize the approval of the mayor and we find nothing in the charter to indicate that the well-settled doctrine of the common law, that what one may do by himself, he may do by another, was intended to be abrogated, and the evidence being that the signature of the mayor was affixed to this ordinance under his immediate direction and by his authority, we are unwilling to de-

clare the ordinance void because the mayor did not with his own hand affix his signature to the ordinance.

The authorities relied on by plaintiff, with the exception of Chapman v. Inhabitants of Limerick, 56 Maine 390, can, we think, be readily distinguished from the facts of this case. Fully recognizing the force of the reasoning of the Supreme Court of Maine in Chapman's case, supra, we cannot bring ourselves to the same conclusion upon the facts of this case, in view of the authorities we have cited to the contrary.

There are moreover other considerations which lead us to the view we have adopted. In this case the ordinance was in due form and had been signed by the presiding officers of both houses of the Municipal Assembly in accordance with the provision of section 6 of article 3 of the charter. It purported to be signed by the mayor in accordance with that section and was authenticated by the city clerk under the seal of the city. The ordinances of the city can be proved by the seal of the city, section 12, article 3, of the charter. To hold that the citizens of the city and the contractors doing work under these ordinances, must in every case ignore the authentication of the clerk and determine for themselves the genuiness of the mayor's signature, would be a harsh rule. It is conceded by learned counsel for plaintiff that their contention is highly technical and formal, and we are constrained to hold that it smacks more of form than substantial justice and hence we must refuse to adopt it.

II. It is next insisted that the taxbills in suit are invalid because the advertisement for bids for the contract was not published upon two Sundays. It is admitted that the newspaper at that time doing the city printing and the only paper in which the advertisement could lawfully be printed and published, was not published on Sunday. By section 12 of article 17 of the charter contracts of this character are required

to be let "to the lowest and best bidder as shall be prescribed by ordinance." By section 811 of the revised ordinances of Kansas City of the year 1898, it was required that "the city engineer shall cause to be published for ten successive days within the twenty days next preceding the time for opening bids, in the newspaper doing the city printing, or if there be none, in such daily newspaper published in the city as he may select, a notice of the letting of a contract for such work to the lowest and best bidder." In the instant case the notice was published in each successive issue of the paper beginning April 5, 1901, and ending April 17, 1901, making eleven publications, but there was no publication of the said notice on April 7th and April 14th, because those were Sundays, and the "Mail," the newspaper in which the notice was published, was not published on Sundays. The contention of the plaintiff is that under the charter and the ordinance quoted, it was essential that the notice should be published every day whether Sunday or not. The argument is that according to the definition of the word "Successive" an uninterrupted course of publication was required by the charter and ordinance, and the failure to publish on two Sundays rendered the notice insufficient. Counsel also rely upon the decisions of the appellate court of this State to the effect that in computing statutory time Sundays will not be excluded. So far as the time of notice only is concerned, no doubt whatever exists that such is the rule. [State v. Green, 66 Mo. 631; St. Joseph ex rel. v. Landis, 54 Mo. App. 315.] But it is conceived that in computing time within which an act must be done these cases do not govern. Thus it is a familiar rule in this State, as well as at common law, that Sunday will not be counted in the construction of statutes giving four days within which to file motions for new trials and in arrest of judgment. [Bank v. Williams,

46 Mo. 17; Cattell v. Pub. Co., 88 Mo. 356; Hales v. Owen, 2 Salk. 625; Rex v. Elkins, 4 Burr. 2130.]

In Thayer v. Felt, 4 Pick. 354, the Supreme Court of Massachusetts, in construing a statutory provision that a sheriff might adjourn a sale three days held that he might adjourn the sale three days excluding Sunday, and made no distinction between a long period and one wherein the time limited is less than a week. Counsel in that case had contended that Sunday is *dies non juridicus* only in regard to those things which are to be transacted in court, but the court did not so confine it, but held that the sheriff might adjourn three secular days, although an intervening Sunday might make it four days in all. The precise question presented here was passed upon in Ex parte Fiske, 72 Cal. 125. In that case the objection was made that a certain ordinance was not published according to law, and the court answered the proposition by saying, "We see no force in the objection that the ordinance was not published according to law. A provision requiring a publication for five successive days in a daily newspaper is complied with by such publication for five successive week-days, although a Sunday intervened, on which there was no issue of the paper." When we take into consideration that the publication of a newspaper on Sunday necessarily involves labor, and there being no evidence that the publication on Sunday of a newspaper is a work of necessity or charity, if the construction given to the ordinance contended for by counsel for the plaintiff should be adopted, the result would be that the ordinance would override the statute of the State forbidding labor on Sunday, section 2240, Revised Statutes 1899. We think the California case was correct and that "ten successive days" in section 811 of the revised ordinances means publication on ten successive days when the paper can be published without the publisher running

the risk of being indicted for violation of the Sunday statute of this State. We think the publication was well enough.

III. The last contention of the plaintiff is that the work has never been completed. By section 10 of article 9 of the charter the taxbills for the building of a sewer are not to be issued until the sewer shall have been completed. As to the failure to complete the contract for building the sewer no complaint is made that the whole amount of pipe required by the ordinance was not laid on the proper lines and at the grade shown by the plans, neither is it contended that all of the flush tanks, manholes and catch basins were not built with the exception of four catch basins at the four corners of 26th and Campbell streets. The testimony disclosed that these were omitted by the express direction of the city engineer for the reason "that the street was not on grade and it would be a needless expense; when the street was graded, the city would put them in." The cost of these catch basins was not included in the final estimate. By the terms of the contract the authority was given to the city engineer to decide all questions which might arise relative to the execution of the contract. The city engineer directed that these four useless catch basins should be omitted and that the contractor should not be paid for them. Their omission could not in any possible way affect the usefulness of the sewer, and considering the fact that the street was not graded, it would appear to have been a perfectly reasonable exercise of his authority for the engineer to dispense with these catch basins at the time the sewer was built. Certainly the landowners, whose property was to be assessed for the payment of the sewer, could have no ground of complaint if this useless expenditure was not charged up to them in the final estimate of the cost of the work.

The main insistence is that the contractor failed
to carry out that particular provision of the contract
which required that where a sewer is built above the
ground and any other foundation than embankment is
used there shall be a covering of earth of the con-
struction and sewer built thereon to a height of one
foot above the sewer with a width at the top of not
less than the greatest external diameter of the sewer.
It appeared that in this case instead of laying the
sewer pipe on top of a masonry wall it was laid *in*
the wall, the masonry extending above the top sewer
pipe.   The city engineer testified that the pipe was
covered with masonry and for that reason he did not
require the earth embankment, as the masonry was
much more lasting and much less liable to wash off.
And it was also shown that the contractor had the
express permission of the city engineer to substitute
the masonry over the sewer pipe in lieu of the loose
dirt.   The evidence definitely shows the amount of
dirt which would be required to make the embankment
over the stone walls to be 3430 yards and the cost of
making this embankment twenty-five cents a cubic yard.
The evidence further showed that the walls were prac-
tically all built in streets and alleys upon which the
plaintiff's property fronted.   The total amount of the
work was $16,261.47.   The total cost of masonry was
$2,061.30.   There was also evidence in regard to the
workmanship and material of the walls and of some
leakage through the walls, and some testimony as to
the method of back filling the trenches and plastering
the manholes.

Upon the main proposition that the sewer was not
completed and for that reason the taxbills were pre-
maturely issued, we think the testimony is against the
plaintiff on this proposition.   The sewer was com-
pleted as a sewer.   Every foot of the pipe of the size
required by the ordinance was laid and on the proper

lines and grades as shown by the plans. We think that the defendant is right in insisting that the test is whether the sewer was completed and not whether some of the details of the work were not strictly in accord with the specifications and the contract. The city engineer accepted the work and the city issued the taxbills, and while this does not estop the plaintiffs from complaining of the manner in which the work was done under the provisions of the Kansas City charter, we think it falls far short of showing that the work was not completed within the meaning of the charter as to the issuance of the taxbills. This charter provision must be kept in view in the determination of this question. Section 19 of article 9 of the charter, provides: "Every taxbill shall in any suit thereon be prima-facie evidence of the validity of the bill, of the doing of the work and of the furnishing of the material charged for and of the liability of the land to the charges stated in the bill; provided, that nothing in this section shall be so construed as to prevent any defendant from pleading and proving in reduction any allegation of any bill, any mistake or error in the amount thereof, or that the work therein mentioned was not done in a good and workmanlike manner, and provided further that if any party shall plead any mistake or error in the amount of the bill, or that the work was not done in a workmanlike manner and that such party before the commencement of the suit tendered to the contractor or holder of the bill the full value of the work done and shall establish the same on the trial, the recovery shall only be for the amount so tendered and judgment for cost shall be rendered against the plaintiff, and provided further if it shall be pleaded and proved that the work for which the bill was issued was not done according to the terms of the contract made by the contractor with the city, then the plaintiff or plaintiffs shall recover thereon

only the actual value of the work done, if of any value, and if not of any value, .the judgment shall be for the defendant.''

It is true that this provision upon its face applied to actions upon the taxbill, but as the principle announced in the charter is in entire harmony with the just and equitable rule so often applied to other building contracts by this court, notably in Yeats v. Ballentine, 56 Mo. 530, to-wit, that, although the work has not been done in exact accordance with the terms of the contract, still a contractor will be permitted to recover what the work is reasonably worth to the owner not exceeding the contract price, we see no reason why it should not apply where the landowner takes the initiative and brings a suit in equity to cancel the bill, and either tenders or offers in his bill to pay' the actual value of the work done. In Quest v. Johnson, 58 Mo. App. 54, the Kansas City Court of Appeals recognized the change made in the law by the charter provision above quoted, and .for that reason distinguished the case from that of Traders' Bank v. Payne, 31 Mo. App. 512. And the same conclusion was reached by this court in Asphalt Paving Company v. Ullman, 137 Mo. 543, and Johnson v. Duer, 115 Mo. 366. In Steffen v. Fox, 124 Mo. l. c. 635, it was said by this court: ''A strict and literal compliance with ordinances, and contracts thereunder, prescribing the manner in which public street improvements shall be made, has never been required as a condition to the acceptance of the work by the city or to the validity of the taxbill, for the cost thereof charged against the property of individuals. The ordinance, under which the work in question was done, was general in its application and, to require literal compliance therewith, under every exceptional circumstance, would be unreasonable and in instances might work 'great hardship and injustice upon a contractor or property-owner, or

both. Indeed, the charter itself, in recognition of this difficulty, secures to the property-owner the right to reduce the recovery of a special taxbill, by showing that 'the work, therein mentioned, was not done in a good and workmanlike manner.' [Charter, art. 6, sec. 25.]'' Now it appears in this case from the testimony that in order to build this sewer upon the grade determined by the city engineer, it was necessary to build up a wall of masonry in the street and alleys in front of plaintiff's lots, upon which to lay the sewer pipe, and this was done, and then the sewer pipe was laid on the top of this wall of masonry in the bed prepared for it, and then the wall built around and over the pipe so as to protect it, and this was done by the special permission of the inspector and city engineer, and all the testimony on the part of the defendant tended to show that this would offer a much safer protection to the sewer pipe than would have been accomplished by merely piling up the embankment of dirt around it, as the dirt would soon wash away from the sewer thus left in the streets and alleys. This proof simply tended to show that the contract had not been observed literally by the contractors, but they had adopted, by the consent of the city engineer and inspector, a different mode of securing and protecting the sewer pipe, but this did not, in our opinion, show that the sewer was not completed but simply that it was completed in a different manner in the details of protecting the sewer after it was completed. And the circuit court evidently found that, although there had been a departure in the details of this latter work from those specified in the contract, no injury had occurred to the plaintiff therefrom. It would serve no good purpose to review all the cases on this subject cited by the respective counsel, as in our view of the charter provision cited and the cases construing the same, the plaintiff cannot defeat the whole assessment

for the sewer, but at most could only be entitled to a reduction from the cost of the work and the bills to the amount of the cost of the omitted embankment. The engineer having in the first instance taken out the cost of the catch basins, which by his directions were omitted. Neither would the fact, which the evidence for the plaintiff tended to show, that in some instances the joints of the pipe were not cemented in a workman-like manner and that some of the manholes were not plastered properly, entitle plaintiff to a cancellation of the taxbills. The circuit court evidently reached the conclusion that there was a substantial compliance with the contract and ordinances for the building of the sewer, and upon a careful reading of the testimony, we think there was sufficient evidence to justify its finding and judgment.

We are not, however, prepared to say that if the plaintiff had proceeded in its bill upon the principle of the ordinance quoted and have tendered the full value of the work done and asked for a reduction of the bills to the amount of the cost of the embankment, but what he should have been credited with the latter sum. But the plaintiff has not proceeded upon that theory, but demands the cancellation of the taxbills entirely. It must be borne in mind that this is a bill to enjoin the collection of a tax, as these special assessments have often been ruled to be the exercise of the tax-ing power, and the rule in equity has often been an-nounced, that before a court of equity will enjoin the collection of the tax on account of its being excessive, the plaintiff should tender the amount which he con-ceives to be actually due and just. [Johnson v. Duer, 115 Mo. l. c. 379; Arnold v. Hawkins, 95 Mo. l. c. 572; Overall v. Ruenzi, 67 Mo. 203.] Under the state of the pleadings in this case, we think the plaintiff can-not complain that the circuit court made no deduc-

tion from the amount of the taxbills, but dismissed the petition.

As to the other items of which plaintiff complained, other than the failure to cover the sewer with an embankment of dirt, we think that the testimony disclosed no actual or appreciable damages of which plaintiff can complain.

Accordingly, the decree of the circuit court must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.