CITY OF MARYVILLE, ex rel., Appellant, v. JOHN B. COX et al., Respondents.

Kansas City Court of Appeals, June 13, 1914.

1. TAX BILLS: Street Paving: Preliminary Resolution. A preliminary resolution declaring the certain street paving necessary should describe the grading as required by the statute; but this description may be made by reference to another ordinance and profile.

2. ———: ———: Estimate: Per Cent over Cost Added in Total. In those cities where an estimate of the work is required before the improvement is ordered, such estimate is a requi-

site to the validity of the tax bills; but an estimate is sufficient which states separately the cost of the several divisions of the work, carrying out the total in a right hand column, though that total is more than the sum of the several divisions; the excess of the total sum being for a per cent allowed for wear, waste, breaking, etc., the allowance of the per cent being known to the board of aldermen to whom the estimate is submitted.

3. ——————: **Information of Aldermen.** The preliminary estimate of the cost of public work is for the benefit of the city council and if that body knows of the addition of a per cent which appears in the total but not in the several divisions of cost, it is a valid estimate.

4. ——————: ——————: **Grade: Variance: City Engineer.** Where a paving ordinance required certain grades in a street near a mile in length the fact that the grading done by the contractor varied from the ordinance at one place as much as two feet, will not avoid the tax bills, where the change was of no profit to the contractor, was better for the abutting property and was in accordance with the grading stakes set by the city engineer whose direction the ordinance required the contractor to follow, the latter not knowing of the change.

5. ——————: ——————: **Foundation of Sand: Vitrified Brick.** An ordinance for street paving required four inches of sand for a foundation upon which four-inch vitrified brick were to be laid, the interstices to be filled with sand. After more than four years of travel brick were taken up and measurements of sand taken in 32 different places in the line of the traffic which showed an average thickness of a little less than three and one-half inches. It was *held* that this did not show the sand was not spread, originally, in substantial compliance with ordinance.

6. ——————: ——————: **Templet: City Engineer.** The fact that a templet reaching from curb to curb was not used by the contractor in smoothing off the top of a sand foundation in street paving because the city engineer thought it impracticable will not avoid the tax bills where he directed the use of another instrument which accomplished the purpose.

7. ——————: ——————: **Curbing: Unfinished: Cost Deducted.** Where the curbing in street paving was not finished as required by the ordinance in that a "floating coat" of cement was not given it to finish it off, and there was no way to estimate the cost of such finish, or to separate it from the remaining cost of the curbing; it was *held* the whole price of the curbing should be deducted from the tax bill.

Appeal from Nodaway Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED AND REMANDED (*with directions*).

T. B. *Buckner*, W. F. *Johnson* and W. G. & G. T. *Pendleton* for appellant.

F. P. *Robinson* and *Cook, Cummins & Dawson* for respondents.

ELLISON, P. J.—Plaintiff's action is to enforce the lien of six special tax bills issued by the city of Maryville, a city of the third class, for grading, paving and curbing one of its streets about one mile in length; the paving to be with vitrified brick, laid down on four inches of sand. Plaintiff is the assignee of the bills. The work was accepted by the city and tax bills issued. The judgment in the circuit court was for the defendant.

At the trial plaintiff introduced the tax bills and thereby made a prima-facie case. Defendant then took up the burden of defence on these grounds as set out in his brief.

First: That resolution "D," the preliminary resolution declaring the work of improvement necessary, did not include and describe the work of grading or reducing said street to the established grade as required by statute.

Second: That there was no estimate of the cost of the improvement prepared and filed by the city engineer with the board of aldermen, and that if the paper filed by him be considered an estimate, that the contract price at which the work was let was above and in excess of said estimate.

Third: That there was not a substantial compliance by the contractor, with the provisions of paving ordinance No. 85, the specifications therein contained and the contract for the improvement, in the following:

A: That the paving improvement was not placed on the grade established therefor by ordinance No. 85, as required, by the specifications and contract.

B: That the sand foundation for the pavement was not constructed four inches thick after rolling, in compliance with the paving ordinance, specifications and contract.

C: That the parkways were not filled and finished level with the curbing in compliance with the paving ordinance, specifications and contract.

D: That the sand bed or foundation was not prepared and smoothed off to a true and even surface with the templet stretching from curb to curb, as required by the paving ordinance, specifications and contract.

E: That the curbing was not finished with a coat of neat cement, troweled and finished to a uniform surface and color throughout, as required by the paving ordinance, specifications, and contract.

The court properly found against defendant on the first ground. The resolution was sufficient under all the decisions on that subject. It meets the requirements stated in City of Kirksville v. Coleman, 103 Mo. App. 215. The reference to another ordinance for the grade was sufficient. It was not necessary that the plaintiff should introduce the latter in evidence.

As to the second gound; when defendant states there was no estimate filed he evidently does not wish to be understood literally, but rather that the paper filed was not a proper estimate. His position is that if it be considered a proper estimate the contract price was in excess of it, and thereby the tax bills were invalidated. The estimate was made by the city engineer that being one of his duties under the statute, section 9407, Revised Statutes 1909. It stated approximately the number of feet or yards, in each of the following divisions of the work, placed in a horizontal column, viz., paving brick, curbing, sand, excavation and oak

headers; and estimated the number of yards or feet in each and the cost per yard or foot. These figures were cast up and the sum placed in a right hand "total" column. In addition to this, and as part of it, was an item of $600 for superintending and engineering. The whole, when cast up, was set down at $19,391.13. But when this is examined it is found that by multiplying the number of yards or feet of the separate items by the estimated price of each, it will only make $16002.44. This discrepancy of more than $3000 was explained by the engineer to the council as arising from the fact that he included in the estimate and in the total an item of twenty per cent on the estimated cost ·of each division of the work. He omitted to state that item on the face of the paper. But the fact is there was no intention to deceive, conceal or mislead and the city council understood it. In truth, an estimate had been stated to the council several days before the one in controversy was filed and the members had called his attention to the fact that he had only estimated the bare cost without putting in anything for labor, waste, breakage and the contractors costs for superintendence, etc. It was for this very necessary purpose that the addition was made. This addition was made to an item of $600, but instead of putting it down as $720, the figures "120" were placed above the main figures "600" and the total of the whole matter was carried out properly to the total column; except in a small matter of calculation which we will notice. The engineer testified he had made a mistake of $36.31 in adding. to the cost of "oak headers" and of $151.89 in adding to the cost of the excavation, which should reduce the total from $19,391.13 to $19,202.93. We do not attach enough importance to an honest error of calculation, amounting, comparatively, to a small sum, perhaps not appreciable at all, divided over the whole work, to annul the whole proceeding. Barring this, which we consider trivial, the estimate stated in the total was

what the engineer intended it to be and was thoroughly understood by the council for whose benefit and consideration the estimate is made. [City of Boonville v. Stephens, 238 Mo. 339; Webb City v. Aylor, 163 Mo. App. 155.] By the terms of the statute itself it is a paper to be "submitted to the board of aldermen."

The next point of defence is, that the grading was not done as established and required by the ordinance. The proposition defendant undertook to establish under this objection was that the grade of the street as paved by the contractor varies from the ordinance from one to twenty-four inches. These variations were at different points named in the evidence. The maximum was at a point midway between two streets. At this point the abutting lots set above the grade named in the ordinance, between six and seven feet; but as actually graded only between four and five feet. The contractor was paid by the yard and by lessening the depth of the cut the abutting property was benefited and the owners have less to pay. The ordinance contained these provisions: "All work shall be done under the supervision and to the satisfaction of the City Engineer." "The Engineer shall furnish all lines and grades and mark same on the ground as needed. The contractor shall carefully preserve all such marks and if reasonable care is not exercised in preserving same the contractor will be charged up with the cost of resetting the same."

The engineer set the grade stakes at this point (Johnson v. Duer, 115 Mo. l. c. 377), and the contractor did the work in accordance with them, without knowing they made any change. So therefore, with no harm to the property owner, with no profit to the contractor, or bad faith in him, and with a finished work as serviceable as if the variation had not occurred, we find no reason either within the bounds of the strict rules of law which properly govern cases of this character, or of fairness to the contractor who is not shown

to have either intended to harm, or have actually harmed, the property owner. Nor was there any intention to harm the general public, nor has it in fact, been harmed by the result produced. We regard the case of Trimble v. Stewart, 168 Mo. App. 276 as much like the present in the particulars here discussed and the remarks in the opinion as especially applicable to many of the facts here considered. By reference to that case it will be seen that the cases therein cited from the Supreme Court of Porter v. Paving Co., 214 Mo. 1, 20; St. Louis v. Rueking, 232 Mo. 325 and Platte City v. Paxton, 141 Mo. App. 175 from this court, fully sustain the decision. In public work of this nature preciseness is scarcely possible and substantial compliance is all that is required. [Cole v. Skrainka, 105 Mo. 303; Galbreath v. Newton, 30 Mo. App. 380; Gratz v. Wycoff, 165 Mo. App. 196; Stover v. Springfield, 167 Mo. App. 328.]

Another ground taken against the validity of the bills is that the sand foundation for the brick did not comply with the contract requiring it to be four inches in depth after being rolled. From the nature of such work it would be impossible to get a foundation of precisely four inches, varying neither more nor less. And it would be practically impossible to get as much as four inches at every part, unless a much greater quantity was put down. In such instances as this the law that a substantial compliance is all that may be required is both wise and just.

We do not regard the record as disclosing any evidence of a character to show there was no substantial compliance. Defendant stated that he measured in one place while the work was in progress and found only two and three-fourths inches of sand. We count this as nothing. At that time there might have been a spot not yet filled which no one could say at the trial, more than four years afterwards was left at that depth. There was other evidence introduced by defendant

showing that at thirty-two places the brick had been removed and the depth of the sand measured. At some of these points the depth was more than four inches, at others just four and at others less than four, at one point falling as shallow as one and three-fourths inches, but the average was 3.3125 inches. Now these measurements instead of being taken at the time the work was completed, or in a reasonable time thereafter, were not made until the lapse of more than four years. During this period the street had been subjected to the travel and traffic of the city. The interstices between the brick were not filled with impervious material, but with loose sand and therefore the underlying foundation of sand was subject, in greater or less degree, to the rains and possibly to the freezing and thawing of the earth only eight inches underneath. It is common observation, that even with cement and stone foundation for city paving, a less time than elapsed here will be sufficient for traffic to make the street uneven, "billowy or wavy." The worthlessness of this evidence may be made clear by the statement that a single course of brick (4 inches) was all there was to protect the sand from the traffic and the elements; and a four inch course of sand was all there was to protect the brick from the necessarily softened earth underneath. The cracks between the bricks, as already stated, were not filled with adhesive or impervious material. So therefore, heavy traffic would tend to press the underlying sand upward between the brick and thus much of it, in coures of time practically all of it, will be carried away. Indeed one of defendant's witnesses stated that in one instance, he found where the underlying earth was "oozing up" between the brick. These considerations applied to the slight discrepancy of a little more than one-half inch of depth of sand (the average) after the long period intervening, leave the evidence without substantive force to

overthrow a claim for money expended for material, work and labor, if otherwise valid.

The ordinance provided as follows: "Whenever the parkway back of the curb needs filling to bring the same to proper grade the surplus dirt excavated out of the street to be paved shall be deposited therein in a uniform manner and the surface of the same when filled to the proper height shall be left to a uniform and even surface." Other parts of the ordinance provided that the dirt need not be hauled a greater distance than 1000 yard, unless there was extra pay. Defendant contends there was no compliance with this part of the ordinance. But there was a failure of proof in this respect. The chief reliance here is that at one place the parkway was neglected, and that eighty-three loads of dirt were thrown in there by Costello so as to secure a foundation for a sidewalk. Passing by any question whether the word "parkway," as used in the ordinance meant the sidewalk space, we find that at this place there was a ditch which was stated by some of the witnesses to be twenty feet deep. It was perhaps impracticable to fill this, or to secure it when filled. At any rate, there was no evidence to show that the failure to fill this was a failure to substantially meet the terms of the ordinance. There was nothing to show that the surplus dirt from this street was not used at other places. Furthermore, we are of the opinion that clearly the ordinance did not contemplate the filling of a ravine ranging from ten to twenty feet in depth. As illustrative of our position in this respect, see Excelsior Springs v. Ettenson, 120 Mo. App. 215, 230, 231.

The next objection to the bills is that the sand foundation was not smoothed off and curved to the subgrade of earth with a "templet, reaching from curb to curb as required by the ordinance." The evidence shows that the proper smoothing and curve was made and as the engineer stated with one kind or character of templet; but on the trial court reminding him that

it did not reach from curb to curb as prescribed in the ordinance, he agreed it failed to meet that requirement. But it was shown that to construct a board templet with the proper curve reaching twenty-four feet across the street and resting on the curbing on each side, of sufficient strength to prevent swagging in the center and yet sufficiently light so as to be movable over the surface without tearing out the curbing, was altogether impracticable. So therefore, under the directions of the city engineer, boards were used which were not in length equal to the width of the street. No harm came of this deviation from the impracticable to the practicable, and no effort was made to avoid securing the precise object required by the ordinance; and manifestly there was no cause in this to support a claim of invalidity of the tax bills.

Coming to the last of the foregoing objections, viz., that the curbing was not troweled off "with a neat coat of cement," as required by the oridnance, we find that this was not done. There was no showing of guaranty of the work, or of its maintenance and there is a failure of evidence to show that the curbing as a whole was in bad condition. Some witnesses stated one or more places where it was cracked or otherwise defective. But considering the entire length and the time since its construction we think these defects unsubstantial; and they are not made a part of defendant's objection. While this will not defeat the entire tax bill (Porter v. Paving Co., 214 Mo. 1, 17-19) the fact remains that the finish called for was not given; and the record does not show what the cost of such finish would be, and we therefore are without data whereby we may ascertain what sum should be deducted from the, price. The cost of the curbing is stated in each tax bill to be $20.63. In such circumstances we have concluded that plaintiff's case failed in that respect. We will therefore strike that part from plaintiff's claim (Hoag v. Ward, 186 Mo. 325, 348; Neil v. Ridge,

220 Mo. 233, 257) and reverse the judgment and re-
mand the cause with directions to enter judgment for
plaintiff for the aggregate amount of the tax bills, less
the sum claimed for curbing. All concur.