# THE SUPREME COURT

### OF

## THE STATE OF MISSOURI,

### MARCH TERM, 1870, AT ST. LOUIS.

#### [CONTINUED FROM VOL. XLV.]

NATIONAL BANK OF THE METROPOLIS, Appellant, *v.* FRANK E. WILLIAMS, Respondent.

1. *Practice, civil — New trial, motion for — Sunday never included in computing number of days.*—Under our statute a service of fifteen days before term, excluding Sundays, is not necessary to bring a party into court; but it is the well-settled rule of common law that, as to matters to be transacted in court, Sunday is *non dies*, and should not be counted. In moving for new trial, or in arrest, a party should be entitled to four working days after trial if the term shall so long continue; and this rule is not annulled by the operation of the statute (Wagn. Stat. 888, § 6).

2. *Evidence—Draft—Testimony of bank cashier—Res gestæ.*—Where a draft sued on was held in bank by the cashier contrary to the usual mode of dealing with such paper, it is perfectly legitimate, as a part of the *res gestæ,* to give the declarations of the cashier concerning the paper, its object and character, and the relation of the drawer to him and the bank, so far as it throws light on the paper, while it was being so held.

3. *Bills and notes—Bank responsible for laches of cashier, when and how far.* —In a suit by a bank on a bill of exchange drawn by defendant in favor of plaintiff, through its cashier, where the proof showed that the bank received it as a bill of exchange, discounted it in the usual course of business, and presented it for acceptance in a reasonable time, the parties to it would be holden

2—VOL. XLVI.

under the law merchant, notwithstanding a private contract of the cashier, outside the scope of his authority, with the drawer, by which the drawer was not to be charged. But plaintiff must look to the paper as a bill of exchange, and charge the parties to it under the law merchant; and where the proof showed that it was drawn to enable the cashier to receive the proceeds of cotton which was to be shipped in the name of the drawer to a drawee in Boston; that it was not entered upon the books of the bank as discounted paper, but kept and counted as cash; that it was so retained until the cotton adventure turned out a failure, when it was presented for acceptance and protested, plaintiff can not recover. In such case, in order to recover at all, plaintiff must treat the bill as its own property, and not that of its cashier, and, as owner, must be charged with the laches of its agents and officers.

*Appeal from St. Louis Circuit Court.*

*Dryden, Lindley & Dryden,* for appellant.

I. The four days required by the statute mean four judicial days. (Wash v. Randolph, 9 Mo. 142.) Sunday is not a judicial day. (Hale v. Owen, 2 Salk. 625; Rex v. Elkins, 4 Burr. 2130.) The common law on the subject is not changed by the statute (Wagn. Stat. 887-8, § 6).

II. The declarations of Hutchinson, by which the defendant sought to connect the draft sued on with the cotton speculations of Hutchinson and Williams, are mere hearsay, and incompetent evidence against the bank: first, because the cotton speculation was not within the scope of his agency or official duty; and second, the declarations did not occur at the time of, nor accompany the acquisition of, the draft by the bank, or by Hutchinson for the bank. (1 Greenl. Ev., § 113.)

III. The defendant rests his freedom from liability on the ground that he was but the agent of Hutchinson in drawing the bill sued on, and in the transactions out of which the bill grew, and that this was known to the bank at the time the bill came to its possession. The facts relied upon, if true, do not acquit the defendant of liability. An agent is personally liable in all cases where he makes the contract in his own name, or voluntarily incurs a personal responsibility express or implied, whether he is known to be an agent or not. (Sto. on Agency, § 269; Mayhew *et al.* v. Prince, 11 Mass. 54; Stackpole v. Arnold, *id.* 27;

Laforce v. Floyd, 5 Taunt. 749; Goupy v. Hardon, 7 Taunt. 159; Eaton v. Bell, 5 B. & A. 340.)

*Garesche & Mead*, for respondent.

I. Plaintiff's motion for a new trial not being made within four days, this court can not review the cause. (Wagn. Stat. 1059, § 6; Williams v. Circuit Court, 5 Mo. 254; Benoist v. Powell, 7 Mo. 224.)

II. Four days mean four judicial days but for the statute itself (Wagn. Stat. 887, § 6).

III. The transaction in this case was for the benefit of the bank, and its cashier's name was used as a cloak. The proof fully warrants this assertion.

IV. The declarations of Hutchinson were competent. (Merchants' Bank v. Berthold, 45 Mo. 527; 1 Greenl. Ev., §§ 113–14; Sto. on Agency, § 134.)

BLISS, Judge, delivered the opinion of the court.

Judgment was rendered in favor of the defendant on Saturday. The plaintiff presented his motion for a new trial and in arrest on the next Thursday, five days from the rendition of the judgment, instead of four, as seems to be required by the following provision of the statute: " All motions for new trials and in arrest of judgment shall be made within four days after the trial if the term shall so long continue; and if not, then before the end of the term." (Wagn. Stat. 1059, § 6.) If the four days are intended to mean four judicial days, then the motions were made in season, because in that case Sunday must be excluded.

Our statute provides that in computing time, the last day, if Sunday, shall be excluded (Wagn. Stat. 888, § 6), and this was held to be the law before its passage. (See cases cited in 2 Hill, 377, note *b*.) The defendant claims that upon the maxim *expressio unius*, etc., all other Sundays must be counted. But this does not follow. The statute only undertook to provide in regard to the first and last days of a statutory period, saying nothing concerning other days. If, then, there is any established rule, we are left to its ruidance.

By the common law this question was well settled. In Hales v. Owen, 2 Salk. 625, the court expressly held Sunday not to be included in the four days in which to move in arrest of judgment, and that the defendant was entitled to four judicial days. In Rex v. Elkins, 4 Burr. 2130, Lord Mansfield applied the rule to criminal cases, and held that in computing the time in which a party might move in arrest, Sunday was not to be counted. The Supreme Court of Massachusetts, in Thayer v. Felt, 4 Pick. 354, in construing a statutory provision that a sheriff might adjourn a sale three days, excluded Sunday, and made no distinction between a long period and one wherein the time limited is less than a week. Counsel had held that Sunday is *dies non juridicus* only in regard to things which are to be transacted in court; but the court did not so confine it, but held that the sheriff might adjourn three secular days although an intervening Sunday might make it four days in all. The Supreme Court of New York, in Anon., 2 Hill, 375, held that the two days provided by statute for a certain proceeding in replevin meant two law days, and that Sunday should not be counted.

Defendant's counsel cite Womack v. McAhren, 9 Ind. 6, where the court held that service of process required to be made ten days before court was a good service, although the intervening Sundays were counted in making up the time ; and they might have cited our universal practice in that respect, for it is never claimed that, under our statute, a service of fifteen days before term, excluding Sundays, is necessary in order to bring a party into court.

Without making the distinction of Thayer v. Felt between long and short terms, it is sufficient in this case to adopt the well-settled rule of the common law, that, as to matters to be transacted in court, Sunday is *non dies*, and should not be counted. In moving for a new trial, or in arrest, a party should be entitled to four working days after the trial if the term shall so long continue. The action was against the drawer of the following bill:

" $30,000. WASHINGTON, D. C., May 14, 1866.

"At sight pay to the order of J. B. Hutchinson, cashier, thirty thousand dollars, value received, and charge the same to account of

"To J. W. Seaver, Esq., Boston, Mass. F. E. WILLIAMS."

National Bank of the Metropolis v. Williams.

Hutchinson was plaintiff's cashier, and certain payments were indorsed on the bill. The defendant claimed that he, though the drawer, was not a party in interest to the bill, and that he was in no way indebted to the plaintiff, but that, in 1865, Hutchinson, who was plaintiff's cashier and general manager, employed him, with the knowledge of plaintiff, to go south to purchase and ship cotton; that Hutchinson advanced $50,000 out of the funds of the bank, and defendant, as a matter of favor, and without consideration, executed without date a draft of $50,000 upon a Boston firm, which was to be kept as a memorandum, and not to be presented until shipments of cotton had been made to meet it; that he went south, drew again for $10,000, shipped cotton to the drawee, who advanced to plaintiff $30,000, and the two drafts were surrendered upon defendant's giving the one sued on; that the last draft was made to Hutchinson, as plaintiff's agent, as a memorandum to enable plaintiff to receive the proceeds of other cotton to be shipped, which were afterward indorsed upon the draft. Defendant avers that all the cotton transactions were at the risk of plaintiff, and that he had no interest except an agreed compensation, and received no consideration for the draft. He also alleges that it was retained by plaintiff an unreasonable time without presentation.

The plaintiff claims that the court committed errors upon the trial in admitting improper testimony, and in refusing to make proper declarations of law. The testimony claimed to have been improperly admitted was given by one McElroy, the plaintiff's teller at the time of the transaction in question, and by one Root, who was employed to assist defendant, and it all pertained to the conduct and declarations of Hutchinson (who is now dead), to his relation to the bank and to defendant, and to the manner in which the draft was treated when it lay in the bank.

Plaintiff's petition shows that the bill was drawn on the 14th of May, 1866, and claims that it was drawn in favor of the bank by the name of Hutchinson, cashier, and delivered to him at once; also that it was not presented for accceptance until February following, and shows no reason for the delay. Testimony not objected to shows that the bill lay in the bank for many months,

and was counted as cash on hand, and was not treated as a discounted bill; and it was during the time it so lay that the declarations of Hutchinson were made which were called out. Now it does not matter whether this bill was the property of the bank or of Hutchinson, its cashier; it was held in the bank by him for some purpose contrary to the usual mode of dealing with such paper, and it seems to me to be perfectly legitimate, as part of the *res gestæ*, to give the declarations of Hutchinson concerning the paper, its object, character, and the relation of the drawer to him and the bank, so far as it throws light upon the paper, while it was so being held. (Greenl. Ev., §§ 113, 114.)

The instructions asked for the plaintiff were all correct, and should have been given, and the finding of the court should have been based upon them, if the bill had been treated and discounted as a bill and the proper steps had been taken with it. But it is undisputed that it lay in the bank for nearly nine months without being sent forward; that it was not treated as a discounted bill nor passed through the books, but treated as a cash item; that this was done by Hutchinson, the cashier and general manager, and must have been with the consent of the directors, who met monthly. The plaintiff claims that it should not be bound by Hutchinson's acts or contracts outside of the scope of his authority, and hence that any agreement he might have made with defendant that he was to pay nothing — that the draft was a mere matter of form, etc.—could not bind the bank. It might, perhaps, be well said that the cashier had no right to involve his bank in cotton speculations, and hence that it could not be bound by his contracts in that regard; and it might be further said that if he acted for himself in this speculation, and not for the bank, it would not be bound by any arrangement he might make with his agent Williams in relation to his liability upon the bill. If the bill was drawn by Williams, as is not disputed, and if the bank received it as such, discounted it in the usual course of business, and presented it for acceptance within a reasonable time, the parties to it would be holden under the law merchant, notwithstanding such private arrangement. But it was not so treated or presented. The testimony clearly establishes the facts that it was

National Bank of the Metropolis v. Williams.

drawn to enable the cashier to receive the proceeds of the cotton, which was to be shipped in the name of Williams to the drawee in Boston; that it was not entered upon the books as discounted paper, but kept and counted as cash; that it was so retained until the cotton adventure turned out a failure, when it was presented for acceptance and protested. The petition itself shows enough, to-wit: the date and place of drawing the bill, that it passed through no intermediate hands, and the long delay in its presentation without any reason or excuse for such delay.

An attempt is made to separate the acts of the plaintiff from those of its cashier, but if the bill was drawn in favor of Hutchinson personally, belonged to him, and was in his possession, the plaintiff has no interest, for no transfer from Hutchinson is shown; but if it was drawn in favor of the plaintiff, as alleged in the petition, and was its property, the plaintiff must be charged with the laches of its officers and agents. The failure of Hutchinson to present the bill was the failure of his bank.

The case was tried by the court. It matters little, with the undisputed and clearly established facts, what declarations of law were given or refused, and it is unnecessary to consider them in detail. The prosecution was vigorous, and the brief and arguments submitted to us are elaborate, but the facts are against the plaintiff.

The money we will suppose was improperly advanced by the cashier upon a speculation outside the legitimate business of the bank; whether with or without the express consent of the directors, does not appear. The defendant was a stranger to the institution, and no attempt is made to charge him except upon his bill. If the bank was a party to the arrangement by which he was not to be charged — by which the bill was taken as a memorandum of the amount advanced, and to enable it to reimburse itself out of the proceeds of the cotton—then the defendant should not be held. But if the bank, as such, made no such arrangement, it is not bound by those made by Hutchinson, but may look to the bill for reimbursement. It must, however, look to it as a bill, and must charge the parties to it as parties under the law; and if it has failed to take the necessary steps to charge

the defendant as the drawer, the action can not be maintained. In either event the plaintiff must go out of court.

The judgment of the Circuit Court is affirmed. The other judges concur.