ELIZABETH SPRING, Appellant, v. E. G. GIEFING, I. N. CARSON, JR., WILL BERRY, C. A. CLEVENGER and LOUIS MUELLER.

Division One, July 30, 1926.

1. **JUDGMENT: Motion to Set Aside: Presumption.** After judgment has been entered in the circuit court affirming a judgment of a justice of the peace, it will be presumed that the motion of the surety on the appeal bond, to set aside such judgment of confirmation and to quash the execution issued thereunder, attacked said judgment from all angles; and it was peculiarly her duty to attack the judgment on the ground that the circuit court was without jurisdiction and therefore the judgment was void for that the appeal had not been taken within the time prescribed by statute.

2. **APPEAL: Timely: Where Last Day is Sunday.** When the last day within which to do an act falls upon a Sunday then the act is within time if performed on the following Monday. The losing party in a case tried in a justice-of-the peace court has ten days in which to appeal, and when the tenth day is Sunday the appeal if taken on the next day is timely. So that where judgment was rendered against defendant on June 30th, and July 10th fell on Sunday, an appeal taken by him on Monday, July 11th, was taken within the statutory time of ten days.

3. ————: **Affirmance of Judgment: Res Adjudicata.** The court of appeals having affirmed the judgment of the circuit court in a cause of which it had jurisdiction, said judgment became **res adjudicata** as to all matters raised against it, and as to all matters which should or could have been raised against it. So that where judgment was rendered against defendant in the court of a justice of the peace, and an appeal was taken by him to the circuit court and in that court a motion to affirm the judgment of the justice was considered and sustained and judgment was rendered against the defendant and the surety on his bond, and thereafter the surety filed a motion to set aside said judgment and to quash the execution, and said motion being overruled said surety appealed to the court of appeals, which court affirmed the judgment for that the appellant had failed to to file her appeal therein within the time prescribed by statute and the rules, the validity of the judgment of the circuit court is invulnerable to further attack.

4. ————: ————: ————: **Matter Actually Litigated: Oral Testimony.** And especially did the question whether the appeal from the court of the justice of the peace was taken in time become **res adjudicata**, where the motion to set aside the circuit-court judgment affirming the justice's judgment was based on the express ground that the appeal was not taken in time, and when that motion was overruled an appeal was taken to the proper court of appeals, which affirmed the judgment because the appeal to it was not filed in time. And that such was the ground of the motion may be established by the oral testimony of witnesses, if admitted without objection, although the motion itself is the best evidence.

5. ————: **Bond: Misrepresentations.** Where the chief ground of a bill to set aside a sheriff's deed conveying land sold under execution of a judgment of the circuit court affirming a judgment of a justice of the peace against the appellant and the surety on his appeal bond, was that the surety was induced by misrepresentation to sign the bond, and the evidence before the trial court to sustain the charge was mostly oral testimony and the rest depositions, this court on appeal, although not bound by the

finding of the chancellor in suits in equity, will give due deference to his finding upon questions shown by the oral testimony, because of the peculiar advantage he has of judging the credibility of witnesses, and his finding adversely to the charge will not be disturbed.

6. ———: ———: ———: **Promise to Protect Surety.** An oral promise by the attorney of the appellant that if she would sign an appeal bond he would protect her from loss is not a fraudulent representation. And certainly it was not misrepresentation where the plaintiff in the judgment in his favor appealed from had nothing to do with the bond, and when the case reached the circuit court tried to have the appeal dismissed on the ground that it was not taken in time.

7. **EXECUTION SALE: Conspiracy.** Where the judgment debtor knew that execution had issued and that her property was advertised for sale, knew the date of sale and knew that unless the debt was satisfied it would be sold, and it sold at a fair price, and was sold to a sister of one of the judgment debtors, an allegation that there was a conspiracy between the purchaser and the other defendants to cheat her out of her property is untenable.

Corpus Juris-Cyc. References: **Appeal and Error,** 4 C. J., Section 2868, p. 898, n. 86. **Evidence,** 23 C. J., Section 1990, p. 164, n. 30. **Executions,** 23 C. J., Section 687, p. 691, n. 62. **Judgments,** 34 C. J., Section 1177, p. 765, n. 60; Section 1322, p. 909, n. 31. **Time,** 38 Cyc., p. 329, n. 43; p. 331, n. 59.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

AFFIRMED.

*Christian Dobach* and *Perry A. Brubaker* for appellant.

(1) The finding, judgment and decree is against the evidence and the weight of the evidence. It deprives appellant of her property without due process of law. She has had no day in court. Article V of Amendments to Constitution of the United States; Article II, Sec. 30, Constitution of Missouri. (2) The court admitted illegal and improper evidence offered on the part of the defendants and each of them, and it was error to admit such evidence. Exhibits 1, 2, 3, 4 and 5 were each admitted over the objection of the appellant. Objections were made that these letters could not have any effect; that if the judgment was void it would not make any difference what knowledge appellant was given of it. (3) The court refused to admit legal and proper evidence offered on the part of appellant, and it was error on the part of the court to refuse legal and proper evidence offered by plaintiff. When offered the same was admitted subject to the objection "that the matter has been adjudicated." (4) The court committed error in holding that the order allowing an appeal and the filing of the transcript in the case of Berry v. Hartley of the judgment rendered in said case before the justice of the peace, gave the circuit court any authority to enter judgment against plaintiff because she was surety on the appeal

bond in said case, or for any reason. (5) The court committed error in holding that the judgment in the case of Berry v. Hartley rendered on or about June 29, 1921, in the justice-of-peace court, and admitted in evidence herein, was not a default judgment as to said Hartley. Secs. 2799, 2843, 2727, R. S. 1919. (a) The said justice of peace had no right or authority under the law to grant an appeal or file any transcript of the proceedings in the case of Berry v. Hartley in the circuit court, until a motion to set aside the default judgment had been filed and the costs paid in said default judgment. Secs. 2799, 2843, 2727, R. S. 1919. (b) No appeal should have been allowed by the said A. J. Gordon, Justice of Peace, because no motion was filed to set aside the said default judgment. Such motion should have been filed within ten days of June 29, 1921. Secs. 2799, 2800, 2801, 2802, R. S. 1919; Secs. 1528, 1529, 1530, 1531, R. S. 1919; Garnet v. Rodgers, 52 Mo. 145; Hessey v. Heitkamp, 9 Mo. App. 36; Smith v. Wineland, 21 Mo. App. 381; Julian v. Rogers, 87 Mo. 229. A default judgment cannot be set aside until the costs are paid. Sec. 2801, R. S. 1919; Hooker v. Railroad, 63 Mo. 449. (c) The fact that the justice of peace entered a default judgment on June 29, 1921, and then did not enter a final judgment in the case until June 30th, did not change the status of the case as to its being a default judgment against Hartley. The law requires him to do certain things in keeping his docket. Sec. 2727, R. S. 1919. The law allows him three days in which to enter a default judgment. Sec. 2843, R. S. 1919. Crooker Shoe Co. v. Fry, 104 Mo. App. 134. The fact that a default judgment was entered and then the entry of judgment was informal would not so far as appellant was concerned make it other than a default judgment. (6) The filing of this affidavit for appeal and appeal bond more than ten days after the judgment of the justice of June 29, 1921, makes the bond void. Sec. 2891, R. S. 1919; Zimmer v. Massee, 117 Mo. App. 344; Downing v. LaShot, 202 Mo. App. 509; Garnet v. Rodgers, 52 Mo. 145; Adams v. Wilson, 10 Mo. 341; Moore v. Winkler, 3 Mo. App. 596; Moore v. Damon, 4 Mo. App. 111; Barnes & Ivers v. Lynch, 3 Mo. 369; Hessey v. Heitkamp, 9 Mo. App. 36. (7) The fact that the appeal bond was not filed within ten days after the entry of judgment on June 29, 1921, will not authorize the entry of judgment by agreement against appellant. The fact that the appeal bond was not filed in time would not authorize the circuit court to take jurisdiction so far as appellant was concerned by consent. The fact that the parties may have appeared will not confer jurisdiction. Robinson v. Walker, 45 Mo. 117; Downing v. LaShot, 202 Mo. App. 509; 4 C. J. sec. 3349, p. 1267. (8) The sheriff, without any levy, advertised this property for sale and conducted a sale that was illegal and void. There were no bids. In fact the property was not sold. If

it was sold it was sold at a sum that was barely more than nominal. Mangold v. Bacon, 237 Mo. 520; Siela v. Kneib, 176 S. W. 1052.

*Bart M. Lockwood* and *I. N. Carson, Jr.,* for respondents.

(1) No final judgment was taken on Hartley's default before the justice of the peace on June 29, 1921, as the same was proved up and entered of record on June 30, 1921. Sec. 2799, R. S. 1919. (2) The appeal to the circuit court from the judgment of the justice of the peace, of June 30, 1921, was taken in time on July 11, 1921, as the 10th day for taking the appeal was Sunday, July 10, 1921. Bank v. Williams, 46 Mo. 17; Keys v. Keys, 217 Mo. 48. (3) The question of the validity of the appeal bond given by Hartley in the justice court and the validity of the appeal itself, as to appellant Elizabeth Spring, is *res judicata*. (4) The court's finding that no fraud had been practiced on the appellant in securing her signature to the appeal bond, and that the sale on execution was in due form and according to law will not be disturbed unless it is manifestly unjust.

GRAVES, J.—This case is an outgrowth of one tried in a court of a justice of the peace in Buchanan County. The case before us is one begun by the filing of a petition in the circuit court of said county.

The petition is in three counts. Count one is the statutory proceeding to ascertain and determine title to a lot in St. Joseph, Missouri. Count two is in ejectment. The third count is in the nature of a bill in equity, in which it is sought to set aside a sheriff's deed to Lot Five, Block Twelve, in St. Joseph Extension Addition, an addition to the city of St. Joseph, Missouri.

This court will require further detail as to facts, *infra*. Defendants Giefing and Carson answered jointly. Defendant Berry answered for himself separately.

To get at the character of the third count, which is in the nature of a bill in equity, some preliminary facts had best be stated. On June 9, 1921, Will Berry, one of the respondents herein, filed a suit against Charlie Hartley and Lizzie King before A. J. Gordon, a justice of the peace in Washington Township, Buchanan County, Missouri. Service was had upon both defendants, June 10, 1921. The case before the justice was thus tersely outlined in the statement filed: "To damages to and conversion of one Paige Automobile, July 3, 1919, $300 due Will Berry." We show the character of the action to show that in the event of default there would have to be an inquiry as to damages before final judgment could be entered by the justice of the peace. The summons of the justice (served on

June 10, 1921) was made returnable on June 21, 1921. The record of GORDON, J. P., then shows:

"Now on this 21st day of June, 1921, Will Berry, with his attorney Bart Lockwood appears and the evidence heard and Lizzie King duly called came out, but makes default. Hartley case continued to June 29, 1921.

"Now on this 22nd day of June, 1921, comes the plaintiff by Bart Lockwood, his attorney, and defendant Lizzie King by B. G. Voorhees, her attorney, and by agreement the default heretofore taken against Lizzie King is set aside and cause set down for June 29, 1921, 10 A. M.

"Now on this 29th day of June, 1921, this cause coming on to be heard, plaintiff appears and the defendant Charlie Hartley, being duly called, came not and makes default. Continued to June 30 as to Lizzie King.

"Now on this 30th day of June, 1921, this cause coming on to be heard, plaintiff appears with his attorney, Bart Lockwood, and the defendant Lizzie King by her attorney, B. G. Voorhees, and Charlie Hartley with his attorney, W. B. Norris. And the court having heard the evidence and having considered the same, finds that the plaintiff is entitled to recover from the defendant Charlie Hartley in the sum of two hundred fifty dollars.

"It is therefore adjudged by me that plaintiff recover from defendant Charlie Hartley the sum of two hundred and fifty dollars so found as aforesaid, together with the cost of this suit, and that plaintiff have execution therefor.

"It is therefore considered by the court that the plaintiff take nothing for his suit and that the defendant Lizzie King go hence without day and recover from the plaintiff her costs and charges in her defense expended.

"A. J. GORDON, J. P.

"Now on this 11th day of July, 1921, comes Charlie Hartley and files affidavit and bond in appeal. Bond approved and appeal allowed and this case is certified and filed in the Buchanan County Circuit Court with a true transcript of this docket and all original papers in the cause on file in my office.

"State of Missouri, County of Buchanan:

"I, the undersigned, a Justice of Peace for Washington Township, Buchanan County, Missouri, hereby certify the foregoing to be a full, true and complete transcript of all the entries and proceedings in the above entitled cause as the same appears of record on my docket 3 at page 46, and that the papers hereto attached are all original papers on file in my office in said cause. Given under my hand this 11th day of July, 1921.

"A. J. GORDON, Justice of Peace."

315 Mo.—34.

Hartley appealed to the circuit court from this judgment, and the plaintiff, Elizabeth Spring, was one of his bondsmen. In the circuit court we have this record in the automobile case of Berry v. Hartley.

"The following entries of record are made in the Circuit Court of Buchanan County, Missouri, as shown by record book 101 of the records of Division No. 2 of said court before the Hon. L. A. Vories, as follows (caption omitted):

"Record 101, page 259. Friday, November 25, 1921, October term, 1921.

"Comes now plaintiff by his attorney and files motion to dismiss appeal.

"Record book 101, page 359. Saturday, January 14, 1922, 12th day of January term, 1922.

"Come now the parties, plaintiff and defendant, by their respective attorneys and the motion to dismiss heretofore filed herein is at this time taken up, considered by the court and the same is by the court overruled.

"Record book 101, page 484. Friday, March 31, 1922, 75th day of the January term, 1922.

"Come now the parties, plaintiff and defendant, by their respective attorneys and the motion to affirm judgment of the justice of the peace is at this time taken up and submitted to the court and by agreement of all the parties herein said judgment of the justice of the peace in the sum of two hundred fifty dollars is affirmed.

"It is therefore ordered, adjudged and decreed by the court that the plaintiff have and recover of and from the defendant and Mrs. Sam Spring and I. N. Carson, Jr., sureties on the appeal bond, the sum of two hundred fifty dollars, together with his costs in this behalf expended, and have therefor execution.

"Record book 101, page 502. Wednesday, April 19, 1922, in vacation.

"Comes now Mrs. Sam Spring, surety herein, and files motion to set aside judgment and to quash execution.

"Record book 101, page 581. Saturday, May 13, 1922, 12th day of May term, 1923.

"Come the parties, plaintiff and defendant, by their respective attorneys, and the motion of Mrs. Sam Spring, bondwoman, to set aside the judgment and to quash execution heretofore filed herein is at this time taken up, considered by the court and the same is by the court overruled.

"Record book 101, page 637. Thursday, June 15, 1922, 38th day of the May term, 1922.

"Comes now Mrs. Sam Spring, surety on the appeal bond, by her attorney and files affidavit for appeal.

"Now here the amount of the appeal bond is fixed by the court in the sum of six hundred dollars.

"Comes now the appellant and presents to the court her appeal bond in the sum of six hundred dollars in due form, filed by Mrs. Sam Spring as principal and Lawrence Brum as surety thereon, which said bond is now here approved and ordered filed.

"And now her appeal is allowed to the Kansas City Court of Appeals.

"MR. BRUBAKER: We offer in evidence the mandate returned from and rendered by the Kansas City Court of Appeals on or about the 6th day of November, 1922, in the case of Will Berry, respondent, against Charlie Hartley, defendant, Mrs. Sam Spring, appellant.

"THE COURT: Let it be considered in evidence.

"Said Mandate is as follows:

"KANSAS CITY COURT OF APPEALS.

"Appeal from Buchanan Circuit Court
"October Term, 1922.

"Will Berry ...............................Respondent
vs.
"Charlie Hartley ...............................Defendant;
"Mrs. Sam Spring ...............................Appellant.

"Now at this day, it appearing to the court here that the said appellant prayed the appeal herein, and that the same was granted more than sixty days before the commencement of the present term of this court, and that said appellant has failed to comply with the law and the rules of this court. It is therefore considered and adjudged by the court that the judgment aforesaid in form aforesaid, by the said Circuit Court of Buchanan County rendered, be in all things affirmed, and stand in full force and effect. And it is further considered and adjudged by the court that the said respondent recover against the said appellant costs and charges herein expended, and have therefor execution."

Thus it appears that Mrs. Spring fought the case through the circuit court, and appealed to the Kansas City Court of Appeals, but there permitted the judgment to be affirmed for failure.

From the record no final judgment in the court of Gordon, J. P., was entered against Hartley until June 30th, and the appeal bond was filed on July 11, 1921, which was Monday. It was filed on the 11th day after judgment, but the 10th day fell upon Sunday. Under the circuit court judgment in case of Berry v. Hartley, an execution was issued and the said Lot 5, described supra, was sold, and deeded to respondent E. G. Giefing. This sale and deed Mrs. Spring seeks to set aside for divers reasons set forth in this third count of her

petition. The circuit court found against her upon the issues involved, and the present appeal here is the result. The details of her alleged equitable claims (third count of her petition) can best be noted in the course of the opinion. This is but a general outline.

I. One ground of the bill in equity (third count of petition) is that the appeal from the justice of the peace was not taken in time,

**Timely Appeal.** and the bond filed after expiration of the time to appeal. After the judgment of the circuit court was entered, Mrs. Spring (plaintiff here) filed her motion to set aside the judgment in the Berry case, and quash the execution. It will be presumed that she attacked the judgment from all angles. At least it was her duty to call the circuit court's attention to the fact (if it was a fact) that the appeal from the justice was out of time, and therefore the circuit court acquired no jurisdiction, and being without appellate jurisdiction its judgment was void.

But the appeal was not out of time. The record of the justice, which we have set out in full, shows a timely appeal. The court judicially knows the days of the week. There was no final and appealable judgment until June 30th, and the appeal was taken on Monday, July 11th. The defendant Hartley had ten days in which to appeal, and it is not denied that the tenth day fell upon Sunday. In such case the following Monday would be within the statutory time. Where the last day within which to do an act falls upon Sunday, then the following Monday is within time. [Bank v. Williams, 46 Mo. 17; Keys v. Keys, 217 Mo. 1. c. 64, and cases cited.]

This contention of the appellant must fail, and this probably accounts for the failure to prosecute the appeal of Mrs. Spring in the Court of Appeals.

The validity of the circuit court judgment in Berry v. Hartley, being affirmed by the Court of Appeals, is *res adjudicata,* as to all matters raised against it, or as to all matters which could and should have been urged against it. This is the fixed rule in the doctrine of *res adjudicata.*

II. In addition to what we have said relative to the motion of Mrs. Spring to set aside the circuit court judgment in the case of Berry v. Hartley, it should be added that there is oral evidence (and this evidence is not objected to for any reason) that this motion was based upon the ground that the appeal was not taken in

**Matter Actually Litigated.** time. I. N. Carson, testifying as a witness, among other things said: "Then Mr. Gaddy, on the part of Mrs. Spring, filed a motion to quash on the ground that the appeal had not been taken in time. That motion was argued before the court. Motion to quash execution." The parties might have

objected and required the production of the best evidence, i. e. the motion itself, but this was not done and the oral evidence admitted without objection. This, with the record of the circuit court showing the filing, by Mrs. Spring, of a motion to set aside the judgment and quash the execution, makes the validity of the judgment *res adjudicata,* as above stated. The record shows the adjudication of the questions in the circuit court, and the affirmance of that action by the court of appeals. In the present status of the record, the contents of the motion of Mrs. Spring is as thoroughly shown as if the motion itself had been introduced in evidence.

III. The chief contention is that Mrs. Spring was induced to sign the bond by misrepresentations. All this was before the court upon oral testimony or depositions—mostly oral testimony. The witnesses were therefore before the chancellor *nisi* and he had the

**Misrepresentations.**  peculiar opportunity of observing their demeanor upon the witness stand. He found against the plaintiff upon this question. Of course we are not bound (in actions in equity) by such finding, but we do give due deference to the findings of a chancellor (upon questions shown by oral evidence) because of the peculiar advantage which he has of judging the credibility of the witnesses. The finding upon this question is amply supported by evidence, and we will not disturb it.

But we will go further. Hartley signed the bond, and he, Carson and Mrs. Spring's son-in-law, Murphy, went to see Mrs. Spring about signing it. Hartley and Murphy were friends. In fact Hartley worked for Murphy. Carson says that Mrs. Spring and Murphy were to sign the bond, but at the last minute the justice of the peace refused to take Murphy upon the bond, and he, Carson (then, on appeal, attorney for Hartley), signed it. But leaving this aside, the substance of the evidence for plaintiff is to the effect that Carson told Mrs. Spring that he would see that she would not lose by so signing. The plaintiff's evidence (Mrs. Spring) upon this question reads:

"Q. Now, on July 11th when you signed this bond what did Mr. Carson tell you to get you to sign it? A. He told me there is no harm for me. I said 'I don't want no trouble.' He said, 'There won't be any trouble for you at all; you don't need to worry about it; I take care of this.'

"Q. What did he say about it being necessary for two to sign the bond? A. Yes, he said it needed two to sign and if I sign it won't harm me at all.

"Q. What did he tell you about having property, if anything?

"MR. LOCKWOOD: We object to that.

"The Court: I will hear the testimony. As between themselves it might be important.

"Q. Did Mr. Carson tell you he was the attorney for Mr. Hartley? A. Yes sir.

"Q. What did he tell you about the chance of winning the case so far as Hartley was concerned? A. He said there isn't any harm at all; he will take care of it.

"Q. Did he make any guarantee that you would not have to pay any money? A. He said I don't have to be responsible; he take care of that.

"Q. When you signed this bond had he already signed it? A. I can't tell; I can't see good enough. I signed it where they told me to sign it and I can't tell you if his name was on it or not.

"Q. But you know he was to sign it? A. Yes."

Other testimony (daughter and son-in-law) for plaintiff upon this question goes no further. There is shown no false representation as to an existing fact. If it shows anything (which we do not here rule) it would be a mere oral promise to protect her from loss. Further, Berry, who was the chiefly interested party in this appeal bond, had nothing to do with Mrs. Spring. He tried to get the appeal dismissed because the bond was filed out of time. At least this is a reasonable inference from the record.

So under all the circumstances we will not disturb the findings of the lower court to the effect that no fraud was committed upon plaintiff in the signing of the bond.

IV. The court found, and the record shows, that the property was levied upon and sold in the usual way, with a number of persons at the sale. The executions were issued by the direction of Mr. Lockwood, who was attorney for Berry from first to last. There were three executions issued. The first was held up by reason of the appeal to the Court of Appeals. The second one was seemingly held up in order to give Mrs. Spring (then represented by her son-in-law, Murphy) a chance to pay, until it was too late for a sale. Murphy was trying to arrange to pay the judgment, or so represented. A third execution was then ordered by Mr. Lockwood, and a levy made and notice of sale given. The trial court indicated throughout, and not without substantial grounds, that Murphy had induced both Mrs. Spring and Carson to sign the bond. Lockwood says that he was familiar with all the facts, and ordered Mrs. Spring's property to be levied upon and finally sold. He says after he had tired of worrying with Murphy and Mrs. Spring, and had the property advertised, he told Carson of the date of sale, and that if the property did not bring the debt and costs, he would look to him for further and full payment. Carson, as to this point, corroborates Lockwood.

The defendant Giefing is the widowed sister of Mr. Carson, one of the defendants. He told his sister of the situation, and she having some means, told Carson to buy in the property for her. There was a question as to whether Mrs. Spring held a fee or a life estate under the will of her husband. It depends upon the construction of her husband's will. The lawyers seemingly thought that only a life estate passed, and Mrs. Spring was sixty-six years old. Mrs. Spring had undertaken to mortgage her interest, so after some bidding Carson bought in the property for his sister for the sum of $340.

This third count of the petition charges a conspiracy between the several defendants to cheat plaintiff out of her property. There is no question that she knew her property would be sold if she did not satisfy the debt. The evidence totally fails to show a conspiracy of any kind. The record is so barren of evidence upon this question, that it really should not be dignified by further discussion.

The judgment of the trial court is the only one which could have been entered under all the facts, and it should be affirmed. It is so ordered. All concur.